**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CAROL BOUCEK**, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) **Case No. 08 CV 5152** |
| | ) |
| **MICHAEL ASTRUE**, | ) **Magistrate Judge Young B. Kim** |
| *Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) **June 16, 2010** |

**MEMORANDUM OPINION and ORDER**

Before the court is Carol Boucek's motion to reverse a decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 416(i), 423. Boucek claims that her asthma, cardiac problems, knee and toe pain, and arthritis render her disabled. The Commissioner of Social Security issued a final decision denying her claims, and Boucek appeals. For the following reasons, Boucek's motion is denied:

**Procedural History**

Boucek applied for DIB in January 2006, claiming that her disability began on November 15, 2005. (A.R. 20, 79.) The Commissioner denied her claim initially and on reconsideration. (Id. at 51-52.) Boucek then requested, and was granted, a hearing before an administrative law judge ("ALJ"). (Id. at 66.) The ALJ concluded that Boucek was not "disabled" as defined in the Social Security Act. (Id. at 16.) When the Appeals Council denied review, (id. at 1), the ALJ's decision became the final decision of the Commissioner,

*see Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Boucek then filed the current suit seeking judicial review of the ALJ's decision. *See* 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c).

## Facts

In her DIB application, Boucek claimed that her disability began on November 15, 2005, when she quit her job as a certified public accountant because her constant exposure at the office to boxes of moldy and dusty documents exacerbated her asthma. (A.R. 25, 37, 116-17, 244-45.) She also claimed that her ability to work is limited by her fatigue, which is caused by a combination of her asthma and a cardiac condition called mitral valve regurgitation. (Id. at 47.) Finally, Boucek claimed to suffer from chronic knee pain and arthritis. (Id. at 30-32, 44-45, 116, 196.) At her hearing before an ALJ, Boucek provided both documentary and testimonial evidence in support of her claims.

### A. Boucek's Evidence

Boucek testified that she was forced to stop working because of her asthma, which causes her to wheeze and experience tightness in her chest and shortness of breath. (A.R. 25, 36.) She explained that her asthma is exacerbated by environmental triggers such as mold, dust, smoke, and strong smells (animals are not among this list, as Boucek keeps a dog and five cats as pets). (Id. at 23, 37.) Boucek had never gone to the emergency room or hospital for treatment of an asthma attack, but she testified that she uses Pulmicort, Nasacort, and a rescue inhaler to control her symptoms. (Id. at 36, 122.) She explained that her asthma

2

became worse while she was working as an accountant, because the job required her to handle old, musty documents. (Id. at 25, 116.) Boucek submitted a letter from her former employer corroborating that his office caused her to cough and wheeze. (Id. at 244.) She testified that when she quit her job, her asthma improved. (Id. at 38.)

Boucek testified that she also suffers from extra heartbeats, skipped heartbeats, and mitral valve regurgitation, which will eventually require valve-replacement surgery. (A.R. 37.) She said that the combination of her asthma and mitral valve regurgitation causes her to feel fatigued and short of breath, and that she tires easily with strenuous activity. (Id. at 46-47.) The ALJ noted that her most recent stress echocardiogram did not show any serious abnormalities, and Boucek reported that her cardiologist, Dr. Raymond Rapecz, told her that she is "doing ok for now." (Id. at 37-38.) She submitted treatment evaluations from Dr. Rapecz, who reported in June 2006 that Boucek was "clinically doing well." (Id. at 213-214.) She also submitted echocardiogram reports from April 2006 and November 2007. Both reports show only mild mitral valve regurgitation, although the 2006 report shows "severe pulmonic regurgitation." (Id. at 196, 247.) Boucek does not take any medication in connection with her heart condition. (Id. at 122, 185.)

Boucek also described her chronic right knee pain, which is caused by arthritis and a degeneration of cartilage. (A.R. 30-31.) She testified that despite undergoing a knee arthroscopy in 1999, she still experiences an aching, throbbing pain that can range from a "three to a fifteen" on a scale of one to ten. (Id. at 30-32.) The pain often keeps her awake

3

at night. (Id. at 38-39.) Boucek explained that the pain is worse when she is active, and if she sits still for too long it can lock in a bent position. (Id. at 31.) She said she is considering getting a cane, but has not used one yet because "it's a psychological thing." (Id. at 32.) Boucek also testified that she only takes over-the-counter medicine to control her pain, and that she had not asked her doctor for prescription pain medication because she does not like to take pills "unless I absolutely have to." (Id. at 45-46.) In support of her testimony she submitted a report from her general practitioner, Dr. Lisa Fortman, who wrote in November 2005 that Boucek will need knee replacement surgery "in the future." (Id. at 201.) Three months later, Dr. Fortman opined that Boucek can walk for one hour and can lift and carry up to ten pounds for short distances, but that during a work day she would need to change positions often and get up to stretch her right knee every hour. (Id. at 183.)

Finally, Boucek described her struggles with arthritis in her thumbs and left toes. She explained that the arthritis in her thumbs makes it difficult for her to grip anything heavy. She also testified that she experienced something called "trigger thumb," but that it had been treated in August 2007 and she was "pretty much back to normal on that." (Id. at 35, 249.) The week before the hearing she had undergone two bunionectomies to fix an abnormality in her big left toe that was inflaming her arthritis. (Id. at 30.) At the time of the hearing, Boucek was taking Vicodin and Celebrex to control the pain from those procedures, but she did not expect to renew the prescriptions when they ran out. (Id. at 39-40.)

4

The ALJ questioned Boucek at length about her daily activities. Boucek explained that she lives alone with her dog and five cats, and that she takes care of her own cooking, cleaning, and housekeeping. (A.R. 23, 40.) Boucek testified that because she tires easily, when shopping she tries to visit only one store at a time. (Id. at 40.) She explained that she naps every day, and that when cleaning her house she has to rest after every half-hour of work. (Id. at 43, 48.) She said that merely changing the linens on her bed is enough to make her lose her breath. (Id. at 48.)

Included in the record is a residual functional capacity assessment submitted by a medical consultant named Dr. Young-Ja Kim. Based on his review of the medical records, he opined that Boucek could sit, stand, or walk for about six hours in an eight-hour work day. (Id. at 189.) He noted that she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Id. at 192.) He did not note any other significant limitations. A second medical consultant, Dr. Frank Jimenez, agreed with Dr. Kim's conclusions. (Id. at 228-29.)

### B. The ALJ's Decision

After considering the proffered evidence, the ALJ concluded that Boucek is not disabled. In so finding, the ALJ applied the standard five-step sequence, *see* 20 C.F.R. § 404.1520, which requires her to analyze:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work;

5

and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)). If at step three of this framework the ALJ finds that the claimant has a severe impairment which does not meet the listings, she must "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). The ALJ then uses the residual functional capacity to determine at steps four and five whether the claimant can return to her past work or to different available work. *Id.* § 404.1520(f), (g). It is the claimant's burden to prove that she has a severe impairment that prevents her from performing past relevant work. 42 U.S.C. § 423(d)(2)(A); *Clifford*, 227 F.3d at 868.

Here, at steps one and two of the analysis the ALJ determined that Boucek had not been employed since November 15, 2005, and that she suffers from two severe impairments: asthma and osteoarthritis. (A.R. 13.) The ALJ did not discuss Boucek's mitral valve regurgitation at step two, but he noted her problem with trigger thumb and concluded that it was not a severe impairment, because Boucek "testified that was successfully treated." (Id.) At step three, the ALJ evaluated Boucek's impairments under social security listings 3.03 (asthma) and 1.02 (major dysfunction of joints). He determined that Boucek's pulmonary function testing did not reveal the level of pulmonary insufficiency specified in the asthma listings. (Id.) The ALJ also concluded that Boucek's arthritis did not meet the specific

6

criteria of listing 1.02, which, when applied to knee pain, requires the "inability to ambulate effectively." (Id.); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02(A).

Turning to step four, the ALJ determined that Boucek has a residual functional capacity to perform "sedentary work in a work environment free of respiratory irritants." (A.R. 14.) In reaching that determination, the ALJ noted that Boucek's records from 2006 show that she had never required emergency room or inpatient treatment for asthma, nor had she required steroids or nebulizer asthma treatments. (Id. at 15.) The ALJ recognized that the office environment at Boucek's last job exacerbated her asthma, but concluded she could still work "in an office environment that does not aggravate her asthma." (Id.) As for the mitral valve regurgitation, the ALJ noted that Dr. Rapecz's 2006 report shows that she only experienced "occasional palpitations" and was "clinically doing well." (Id.) He also noted that her December 2006 cardiac screening tests "were all either negative or within normal limits." (Id.) The ALJ considered Boucek's arthritis, but after noting that she took only over-the-counter pain medication, he concluded that "the pain from this condition is largely controlled." (Id.)

Having determined that Boucek's residual functional capacity would allow her to perform sedentary work, the ALJ concluded that she could return to her past relevant work as an accountant. (A.R. 16.) He once again noted that her most recent job "was apparently in an environment which was excessively dusty," but explained that "there is no indication in the record that she has any allergies that would preclude office work in general." (Id.)

7

Accordingly, the ALJ concluded that Boucek is not under a disability as defined by the Social Security Act, and denied her application for DIB. (Id.)

**Analysis**

In Boucek's current motion—which is one for summary judgment in form if not in label—she attacks the ALJ's decision with multiple arguments at almost every stage of the five-step framework, but she does so in a largely conclusory manner. It is the equivalent of throwing a pot full of wet noodles at the kitchen wall to see whether any will stick. Here, none do. First, Boucek argues that at step two the ALJ failed to properly analyze her severe impairments because he did not discuss her mitral valve regurgitation or the cartilage degeneration in her right knee. Next, she argues that the ALJ erred at step three by failing to properly analyze the asthma and joint pain listings, and by excluding any analysis of whether her conditions are medically equivalent to other listings. Boucek also argues that the ALJ improperly weighed the evidence in reaching the step-four residual functional capacity, and finally, that the ALJ had no basis to conclude that she can return to general office work.

In reviewing the Commissioner's decision denying DIB, this court asks only whether the ALJ applied the correct legal standards and reached a decision that is supported by substantial evidence. 42 U.S.C. § 405(g); *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

8

(1971) (quotation omitted). This court reviews the entire record in making the substantial evidence determination, but does not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869. We must affirm the ALJ's decision if reasonable minds could differ regarding whether the claimant is disabled. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Boucek first argues that the ALJ erred at step two of the disability framework by failing to consider whether her mitral valve regurgitation, "status-post knee arthroscopy," and foot problem constitute severe impairments.[1] (R. 31, Pl.'s Mem. at 8.) Boucek faults the ALJ for omitting any discussion of those ailments and for providing what she considers an insufficient analysis of the evidence. But given the ALJ's findings that her asthma and osteoarthritis constitute severe impairments, Boucek's focus on the step-two analysis is misplaced. As the Commissioner points out, step two "is essentially an initial screening device" to weed out claimants whose impairments do not significantly limit their ability to work. *Taylor v. Schweiker*, 739 F.2d 1240, 1243 n.2 (7th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). Here the ALJ did not screen out Boucek's claim; he found that her osteoarthritis and asthma constitute severe impairments. And although he did not discuss all

---

[1] Boucek also includes arthritis in this list, but the ALJ specifically found that her osteoarthritis constitutes a severe impairment. (A.R. 13.)

9

of her impairments at step two, he considered them at step four in determining whether Boucek retains a residual functional capacity to allow her to keep working.

More importantly, it was Boucek's burden to prove at step two that her ailments are severe, *see Clifford*, 227 F.3d at 868, and even now she points to no record evidence to support her assertion that the impairments the ALJ overlooked at step two should be characterized as severe. With respect to the mitral valve regurgitation, Dr. Rapecz said that some day Boucek will need valve replacement surgery, but noted just months before the hearing that she is "clinically doing well." (A.R. 37, 213-14.) Boucek's knee arthroscopy took place eight years before the hearing, and there is no evidence that the surgery, rather than the osteoarthritis, has had lingering debilitating effects. As for her foot problems, Boucek had corrective surgery the week before the hearing and she submitted no supplemental evidence to suggest that the surgery was unsuccessful in alleviating her foot pain. Finally, Boucek criticizes the ALJ for concluding that her trigger thumb is not a severe impairment. The ALJ based that decision on Boucek's testimony that her trigger thumb had been treated successfully. (A.R. 13.) According to Boucek this analysis "misses the mark" because, she says, the fact that her condition was treated does not mean it now functions normally. (R. 31, Pl.'s Mem. at 8.) But Boucek testified that she was "pretty much back to normal" with respect to her trigger thumb, (A.R. 35), and she points to no evidence anywhere in the record to support her theory that her trigger thumb is a severe impairment. Accordingly, there is no reversible error in the ALJ's failure to analyze each of these

impairments at step two. *See Morgan v. Astrue*, No. 07 CV 1741, 2009 WL 650364, at *8 (N.D. Ill. Mar. 9, 2009) (noting that "we have found no case that has been remanded solely on the basis of a Step Two determination that was favorable to the claimant, but cursory"); *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (noting that where ALJ finds claimant suffers from severe impairments, failure to find other "condition constituted a severe impairment could not constitute reversible error").

Next, Boucek raises several underdeveloped arguments in an effort to dismantle the ALJ's step-three determination. At this stage the ALJ considered the opinions of the medical consultants and concluded that Boucek's conditions do not meet or medically equal any listing. Specifically, the ALJ determined that Boucek's pulmonary function testing did not reveal readings that meet the requirements for asthma listing 3.03, and her "arthritic condition has not manifested clinical signs and findings that meet the specific criteria of Listing 1.02." (A.R. 13.) Boucek first faults the ALJ for considering her asthma only under listing 3.03(A), and states without explanation that listing 3.03(B) "is more appropriate to an asthmatic condition." (R. 31, Pl.'s Mem. at 9.) But to meet listing 3.03(B), a claimant must experience asthma attacks which, despite prescribed treatment, occur at least once every two months and require physician intervention. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.03(B). Boucek has not cited any evidence in the record showing she has ever experienced an asthma attack that could not be controlled by her prescription inhalers and that required a doctor's intervention. An ALJ is not required to consider listings that obviously do not apply. *See*

11

*Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence.")

Boucek also argues that the ALJ failed to explain sufficiently his determination that Boucek's knee problem does not meet listing 1.02. It is true that the ALJ's explanation in this regard is terse—he says only that after considering the opinions of the medical experts he did not see clinical signs that meet the listing 1.02 criteria. (A.R. 13.) But again, Boucek has pointed to no evidence to support her argument that her knee condition meets the listing. Listing 1.02(A) requires chronic joint pain that results "in inability to ambulate effectively," meaning "an extreme limitation of the ability to walk . . . that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02(A). Boucek cites no evidence to demonstrate that her knee pain limits her in these ways. On the contrary, Dr. Fortman and the state medical consultants agreed that Boucek can walk for up to an hour without resting. (A.R. 183, 185.) Accordingly, the ALJ correctly noted that there are no clinical signs that Boucek meets the 1.02 listing, and even though his explanation is brief, it is sufficient to reassure this court that his determination is based on substantial evidence. *See Eichstadt*, 534 F.3d at 665-66.

Boucek also raises the wholly undeveloped argument that "the ALJ erred at Step Three by failing to proffer any equivalence inquiry in violation of 404.1526." (R. 31, Pl.'s Mem. at 10.) The regulation she cites states that an impairment "is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any

listed impairment." 20 C.F.R. § 404.1526. Here, the ALJ stated that Boucek does not have an impairment that medically equals a listing. (A.R. 13.) At the hearing, Boucek's attorney argued that the ALJ should consider whether her asthma medically equals the listing, (id. at 22), but as described above, there is no evidence that her condition meets those criteria. Counsel has not explained what other listing her impairments might equal. Accordingly, even if the ALJ erred by failing to provide a more detailed analysis for his determination that her condition does not medically equal a listing, that error is harmless. *Sanchez ex rel. Sanchez v. Barnhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006).

Boucek's final attempt to persuade the court that the step-three analysis involves reversible error is her contention that the ALJ improperly ignored Dr. Fortman's opinions in favor of the state medical consultant's opinions. The medical consultants concluded that Boucek can perform a range of light work, indicating that they did not believe that her impairments meet or equal the listings. Boucek asserts that their opinions conflict with Dr. Fortman's, but she points to nothing in the record to support that assertion. This court's review of Dr. Fortman's records reveals no opinion comparing Boucek's impairments to the listings or opining that she cannot perform light work. In fact, in 2006 Dr. Fortman opined that although Boucek's arthritis causes her difficulty in reaching and gripping, she nonetheless can walk for an hour and lift and carry ten pounds for short distances. (A.R. 183.) Because Boucek has pointed to no evidence that Dr. Fortman disagreed with the medical consultants' opinions, the ALJ did not err in failing to discuss Dr. Fortman's

opinions at stage three. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) (noting that ALJ is not required to discuss every piece of evidence to support a conclusion).

Boucek also raises a host of arguments urging reversal in connection with the ALJ's step-four analysis. At step four, the ALJ considered Boucek's medical history, treatment records, and testimony regarding her daily activities, and concluded that despite her asthma, arthritis, and other pain, Boucek is capable of performing "sedentary work in a work environment free of respiratory irritants." (A.R. 14.) Boucek first argues that the ALJ failed to describe how her impairments and combination of impairments impact her ability to function. In assessing a claimant's residual functional capacity, an ALJ is required to provide a narrative explanation matching up the evidence to his conclusions. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); SSR 96-8p at *7. But the ALJ's decision will stand as long as the ALJ minimally articulates that narrative, such that this court can follow his reasoning and determine that the conclusions are supported by substantial evidence. *See Skarbek*, 390 F.3d at 503. Here, the ALJ sufficiently explained his conclusion that Boucek can perform sedentary work. The ALJ described the medical evidence supporting her claims of knee and thumb pain, but noted that her knee pain is controlled with over-the-counter medicine and that, even according to Boucek, her thumb was treated successfully. He considered her mitral valve regurgitation but noted that her most recent cardiogram showed that she was in normal limits and her cardiologist thought she was "clinically doing well." (A.R. 213-14.) The ALJ noted that Boucek's last working

environment exacerbated her asthma, but found no evidence suggesting that she could not work in other office environments. The ALJ also explained that Boucek can do things like go shopping, mow the lawn, garden, and prepare meals. Based on the combination of Boucek's testimony regarding her daily activities and her treatment records showing that the severity of her pain and asthma are controlled by medication, the ALJ logically concluded that she can perform sedentary work.

Next Boucek argues that the ALJ failed at step four to consider evidence that contradicted his conclusions. She then presents a laundry list of what she considers examples of that evidence, and concludes that "[a]ll of the aforementioned evidence is reasonably related to severe exertional and nonexertional limitations which reasonably could be expected to derive from such conditions." (R. 31, Pl.'s Mem. at 12.) Boucek does not explain what functional limitations her laundry list of evidence supports. And although she is correct that an ALJ cannot ignore all evidence that contradicts his conclusions, *see Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004), he is not required to discuss every scrap of evidence in the record, *see Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Here, the ALJ recognized much of the evidence favorable to Boucek's claim, including her complaints of pain, her diagnoses of asthma and mitral valve regurgitation, and the records revealing her "right locked trigger thumb and a left foot bunion." (A.R. 15.) That he did not describe every condition that Boucek now lists in her brief does not constitute error, *see Rice*, 384 F.3d at 371, especially where Boucek has not even attempted to demonstrate that any of the

15

conditions she lists would restrict her ability to perform sedentary work in an office free of respiratory irritants.

Boucek also argues that the ALJ played doctor and relied on "his own medical hunches" instead of record evidence. (R. 31, Pl.'s Mem. at 12.) Specifically, she argues that the ALJ's observation that she controlled her pain with over-the-counter medication "carries no significance because the ALJ is not a doctor." (Id. at 11.) But Boucek's pain-management regimen is just one factor the ALJ found to weigh against a finding that her pain is disabling, and that factor rests on Boucek's own testimony. Boucek also argues that the ALJ made "medical guesses" when he concluded that her asthma is not disabling based on the facts that her lungs are clear and she is able to treat her asthma with inhalers and without hospital treatment. But again, those observations are drawn from Boucek's medical records, not from "medical guesses," as Boucek suggests. Boucek also faults the ALJ for observing that the residual effects of her then-recent toe surgery should be transient. But Boucek herself testified that the surgery had treated her toe problem and expressed optimism that the arthritis in her foot would be improved. (A.R. 30, 39-40.) Thus once again, the ALJ's observation is supported by record evidence instead of improper medical assumptions. Boucek half-heartedly suggests that the "ALJ would have benefitted from the advice of a medical expert at the hearing." (R. 31, Pl.'s Mem. at 13.) But as the Commissioner points out, Boucek's attorney never asked the ALJ to consult a medical expert. Even now, Boucek

16

does not explain what functional limitations a medical expert would have identified based on the medical evidence.

Finally, Boucek argues that the ALJ erred at step four in concluding that she can return to her prior relevant work as an accountant. She labels as "baseless" the ALJ's observation that no record evidence suggests Boucek could not work in an office free of respiratory irritants, but Boucek points to no evidence to suggest otherwise. (R 31, Pl.'s Mem. at 13.) Instead, she faults the ALJ for pointing out that according to the Social Security Reports, "most office environments do not have excessive pulmonary irritants." (A.R. 16 (citing SSR 85-15).) Boucek argues that the ALJ overlooked that the Social Security Reports go on to say that: "[w]here an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions." SSR 85-15, at *8. But Boucek does not argue that she can function only in an environment that is "entirely free of irritants." *Id.* Indeed, Boucek herself described her prior work environment—the one which exacerbated her asthma—as being full of boxes of old, musty, dusty papers. She testified that after she left that particular environment, her asthma improved. She described caring for her pets, cleaning her house, shopping, and visiting doctors and never suggested that any of those situations or environments exacerbate her asthma. In her brief to this court she points to no evidence that supports her theory that

she cannot work in any office at all. Accordingly, she has not shown that the ALJ erred in concluding that she can return to her past work as an accountant.

## Conclusion

For the foregoing reasons, Boucek's Motion to Reverse the Final Decision of the Commissioner of Social Security is denied.

ENTER:

_____
**Young B. Kim**
**United States Magistrate Judge**